# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

RICHARD G. MARR,

        Plaintiff,

v.                                                             Case No. 09-CV-228

JOHN DOES 1-5, and BANK OF AMERICA, N.A.,
as successor to Countrywide Bank, FSB,
f/k/a Countrywide Bank, N.A.

        Defendant.
   and

BANK OF AMERICA, N.A.,

        Third Party Plaintiff,

v.

SUMMIT TITLE SERVICES, LLC,

        Third Party Defendant.

_____

# ORDER

This action arises out of a residential mortgage transaction. Plaintiff Richard G. Marr ("Marr") claims that defendant Bank of America, N.A. ("Bank of America") (as a successor to Countrywide Bank, F.S.B. f/k/a Countrywide Bank, N.A.), violated certain provisions of the Truth in Lending Act, 15 U.S.C. § 1601 *et. seq.* ("TILA") and Federal Reserve Board Regulation Z, 12 C.F.R. part 226. Specifically, plaintiff seeks rescission of his mortgage and recovery of damages from defendant for its alleged

failure to meet TILA disclosure requirements. (Compl. ¶ 1).[1] Now before the court is defendant's motion for summary judgment.[2] (Docket #24). For the reasons set forth below, the court will grant defendant's motion.

## BACKGROUND

In 1973, plaintiff Marr purchased a home located in Wauwatosa, Wisconsin. (Pl.'s Resp. to Defendant's Proposed Statement of Facts [DPSF] ¶1). In early 2007, Alpine Financial ("Alpine"), a mortgage broker, contacted Marr about refinancing his mortgage on the Wauwatosa property. (Pl.'s Resp. DPSF ¶ 5). Marr was interested in refinancing his mortgage because he "needed the money" for personal, family and household purposes and "needed credit card help." (Pl.'s Resp. DPSF ¶ 6). In February 2007, Marr applied for a loan from Countrywide Bank, N.A. ("Countrywide") in the amount of $195,000. (Pl.'s Resp. DPSF ¶ 7). Countrywide approved Marr's application and then Alpine contacted Summit Title to perform the closing on the loan. (Pl.'s Resp. DPSF ¶ 10). On February 23, 2007, a closing agent from Summit attended the closing of Marr's loan. (Pl.'s Resp. DPSF ¶ 38). It is undisputed that Marr signed an acknowledgment at the closing confirming he received two copies of the notice of his right to cancel the loan transaction. (Pl.'s Resp. DPSF ¶ 48). Though the defendant and the plaintiff disagree on how certain aspects of the

---

[1] Marr asserts that he properly rescinded his loan within three years of the loan's closing, but Bank of America refused to honor the rescission and, therefore, he is entitled to damages under TILA.

[2] Third party defendant, Summit Title Services, LLC ("Summit Title") also joins in Bank of America's motion for summary judgment. (Docket #25).

closing were conducted, the only dispute over a *material* fact is whether the defendant (through the closing agent) provided the plaintiff with two copies of the notice of plaintiff's three-day right to cancel the loan, as is required by 15 U.S.C. § 1635 and 12 C.F.R. § 26.23, or just one copy of the notice as the plaintiff claims. Whether this factual dispute is genuine is the only issue the court must address on this motion for summary judgment.

## DISCUSSION

### I. Legal Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

"The initial burden is on the moving party . . . to demonstrate that there is no material question of fact with respect to an essential element of the nonmoving party's case." *Delta Consulting Group, Inc. v. R. Randle Constr., Inc.,* 554 F.3d 1133, 1137 (7th Cir. 2009) (quoting *Cody v. Harris*, 409 F.3d 853, 860 (7th Cir. 2005)). Once the movant satisfies this initial burden, the burden then shifts to the nonmoving party who "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Doe v. Cunningham*, 30 F.3d 879, 883 (7th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). There is no issue for trial unless the nonmoving party demonstrates that there is *sufficient evidence* in the nonmoving party's favor for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249. If the evidence is "merely colorable" or is "not significantly probative," summary judgment may be granted. *Id.* Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact. In ruling on a summary judgment motion, the

court must view the evidence plus all inferences reasonably drawn from the evidence in the light most favorable to the non-moving party. *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 630 (7th Cir. 2007).

## II. Analysis

TILA provides that debtors, such as Marr in this case, have the right to rescind a loan transaction. Rescission is "a process in which the creditor terminates its security interest and returns any payments made by the debtor in exchange for the debtor's return of all funds or property received from the creditor (usually the loan proceeds)." *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 573 (7th Cir. 2008) (citing 15 U.S.C. §1635(a)). TILA also requires creditors, such as Bank of America, to provide debtors (or obligors) with notice of the right to rescind. TILA states in pertinent part:

> the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section.

15 U.S.C. § 1635(a). A regulation issued under this statute specifies that in order to provide proper notice, "a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind." 12 C.F.R. §226.23(b)(1). If the creditor does not adequately inform the borrower of the right to rescind at or before

-5-

closing, the right is extended to three days from the time the creditor does provide the required notices and disclosures, or three years from the date of closing, whichever is sooner. 15 U.S.C. §§1635(a) and (f); *Andrews,* 545 F.3d at 573.

In this case, the only issue for the court to address is whether, as a matter of law, Marr has produced sufficient evidence to substantiate his claim that he did not receive two copies of the notice of the right to rescind at the closing. TILA provides that "[n]otwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof." 15 U.S.C. § 1635(c). In this case, Marr signed an acknowledgment that he received two copies of the Notice of Right to Cancel form ("NORTC"). (Pl.'s Resps. DPSF ¶ 48). Thus, there is a rebuttable presumption that Marr received duplicate copies of the NORTC.

The statute and regulations are silent as to what evidence is necessary to overcome the rebuttable presumption established by TILA. Generally, "a presumption imposes on the party against whom it is directed the burden of going

forward with evidence to rebut or meet the presumption." Fed. R. Evid. 301.[3] After examining the evidence, the court finds that Marr has not provided evidence that adequately contradicts the presumption of receipt, as he has failed to produce sufficient evidence that would support a jury finding of non-delivery.

To rebut the presumption, Marr first contends that his deposition testimony, in which he states under oath that he received only one copy of the NORTC form, is sufficient evidence to rebut the presumption of delivery. Marr stated the following at his deposition:

> Q: By signing the notice of right to cancel, you acknowledged that you received two copies of the notice of right to cancel?
>
> A: No, I received – [objection omitted] I only received one copy.

---

[3]The Advisory Committee Notes on the 1974 Enactment on Fed. R. of Evid. 301 provide some guidance as to the weight to be given a presumption. The Advisory Committee Notes state:

> With respect to the weight to be given a presumption in a civil case, the Committee agreed with the judgment implicit in the Court's version that the so-called 'bursting bubble' theory of presumptions, whereby a presumption vanishes upon the appearance of any contradicting evidence by the other party, gives to presumptions too slight an effect. On the other hand, the Committee believed that the Rule proposed by the Court, whereby a presumption permanently alters the burden of persuasion, no matter how much contradicting evidence is introduced – a view shared by only a few courts – lends too great a force to presumptions. Accordingly, the Committee amended the Rule to adopt an intermediate position under which a presumption does not vanish upon the introduction of contradicting evidence, and does not change the burden of persuasion . . .

Though courts disagree generally about the required quantum or quality of evidence necessary to oust a presumption, this court is guided by the intermediate approach dictated by the Federal Rules of Evidence, together with the legal standard for summary judgment, which requires that a nonmoving party demonstrate there is *sufficient evidence* in that party's favor for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249. Accordingly, this court will not subscribe to the extreme view that *any* evidence having a tendency to support the contrary of the matter presumed will oust the presumption. Instead, sufficient evidence is required.

(Blythin Decl., Ex. A [Marr Dep. 45:3–11]) (Docket #28-5). Typically, courts have found that such bald denials of receipt are not sufficient to rebut the presumption of delivery. *See e.g. McCarthy v. Option One Mortgage Corp.*, 362 F.3d 1008, 1011 (7th Cr. 2004) (finding mere assertion of non-receipt insufficient to rebut written evidence that disclosures were provided); *Williams v. GM Mortgage Corp.*, 2004 WL 3704081, *8 (E.D. Mich. Aug. 18, 2004) ("a Plaintiff's bare bones, self-serving denial is not sufficient to rebut § 1635(c)'s statutory presumption."); *Sias v. Washington Mutual Bank, FA,* 2010 WL 1223923, *2 (E.D. Tenn. March 23, 2010) ("A plaintiff's assertions that she received one copy, rather than the required two copies, of a particular notice will be insufficient to rebut this presumption."); *Abbot v. Washington Mutual Finance, Inc.*, 208 WL 756069, *2 (E.D. Pa. March 20, 2008) ("A borrower's testimony disclosures were not provided, without more, is insufficient to rebut the presumption disclosure occurred where there is written acknowledgment of receipt.").

On the other hand, some courts have found that a borrower's testimony that he did not receive copies of the NORTC creates a question of fact to be decided at trial. *See e.g. Briggs v. Provident Bank*, 349 F.Supp.2d 1124, 1129 (N.D. Ill. 2004); *Macheda v. Household Fin. Realty Corp.*, 631 F. Supp.2d 181, 191 (N.D.N.Y. 2008) (holding that offer of proof to rebut presumption of delivery precluded summary judgment for either party); *Jobe v. Argent Mortg. Co., LLC*, 2008 WL 450432, *4-5 (M.D.Pa. Feb. 15, 2008) (finding plaintiffs' sworn statements that they were not each

given two copies of NORTC sufficient to rebut presumption and defeat summary judgment); *Cooper v. First Gov't Mortg. & Investors Corp.*, 238 F.Supp.2d 50, 64-65 (D.D.C. 2002) (same); *Hanlin v. Ohio Builders & Remodelers, Inc.*, 212 F.Supp.2d 752, 762 (S.D.Ohio 2002) (same).

The court recognizes the remedial aim of TILA is to protect consumers, to give them meaningful disclosures, and to encourage the informed use of credit. *See* 15 U.S.C. § 1601(a). Moreover, TILA mandates strict compliance with the required disclosures – technical violations will not provide creditors with an escape from liability. *Smith v. No. 2 Galesburg Crown Finance Corp.*, 615 F.2d 407, 416 (7th Cir. 1980). That being said, violations of TILA still must be proven. In the case of a motion for summary judgment, the plaintiff must set forth sufficient evidence demonstrating that a genuine dispute exists for trial. Here, Marr has failed to do so. Even when viewed in a light most favorable to plaintiff, plaintiff's testimony as a whole actually suggests that he is unable to identify with any certainty which documents and how many of those documents he received at closing, rather than that he received only one notice.

First, in addition to his denial that he received two copies of the NORTC, plaintiff testified that at the closing, as he signed each document provided to him by the closing agent, the closing agent placed a duplicate of that document in a separate pile near plaintiff. (Blythin Decl., Ex. A [Marr Dep. 24:2-8]) (Docket #28-4); (Plaintiff's Additional Material Facts [PAMF] ¶14) (Docket #28-1). Plaintiff concludes

that because only one copy of the NORTC was in the original stack of papers, only one copy of the NORTC was given to him to keep. (PAMF ¶ 23) (Docket #28-1); (Pl.'s Br. in Opp'n 10) (Docket #28). However, Marr also admits in his deposition testimony that he did not note the number of copies of any of the documents he was provided, (Blythin Decl., Ex. A [Marr Dep. 35:7-13]) (Docket #28-4), nor did he read or review the documents presented to him at the closing. (Blythin Decl., Ex. A [Marr Dep. 24:9-11]) (PAMF ¶¶ 15-17). He claims this was due to his being rushed through the closing. (PAMF ¶ 15-17). It is immaterial whether Marr was rushed through the closing. What is significant is that Marr's testimony, read in full, does not demonstrate he received only one notice of the NORTC at the closing. At most, this testimony shows he is not certain how many copies of the NORTC he received. Absent more compelling evidence of non-receipt, defendant is entitled to the benefit of the presumption.

To further rebut the presumption, Marr offers what is often referred to as an "envelope theory." That is, Marr argues all of the documents that he received at the closing were contained in an envelope or folder. (Blythin Decl., Ex. A [Marr. Dep. 32:12-25]). He claims that after leaving the closing, he put the folder in a filing cabinet in his home – he lives alone – and did not disturb the contents of the folder until the folder was examined by his attorney with regard to another matter. (Blythin Decl., Ex. A [Marr Dep. 33:1-24, 34:18-21]). When examined by the attorney, the envelope did not contain the required duplicate copies of the notice. (Blythin Decl.,

Ex. A [Marr Dep. 35:18-21, 36:5-8]). Instead, Marr claims that the envelope contained only one copy of the notice. Marr argues that this evidence, when viewed in conjunction with his denial of receipt, creates a genuine dispute over a material fact and, therefore, the issue must be submitted to a jury.

First, the court notes that the envelope theory, alone, has been found by certain courts to be insufficient to rebut the presumption. *See Gaona v. Town & Country Credit*, No. 01-44, 2001 WL 1640100, *2 (D.Minn. Nov. 20, 2001) *rev'd in part on other grounds, Gaona v. Town & Country Credit*, 324 F.3d 1050 (8th Cir. 2003) (finding that an allegation that notices "are now not contained in the closing folder is insufficient to rebut the presumption" because there are any number of explanations for the missing notices); *see also Jackson v. Century Mortgage Corp.*, 320 F.Supp.2d 608, 612 (E.D. Mich. 2004).

The Seventh Circuit has not addressed this issue. However, in this case, the court concludes that the envelope theory is not sufficient evidence of non-receipt, especially in light of the other evidence provided by Marr which suggests that not only was Marr unable to identify with any certainty what documents and how many documents he received at the closing, but also suggests the contents of the folder were disturbed at some point between the closing and the time when his attorney reviewed the documents two years later. It is undisputed that several other documents were found in the folder that post-dated the closing, including unrelated loan statements, utility bills, tax bills and bank statements. (Pl's Resp. DPSF ¶ 56).

Even though these documents were found in the folder, and obviously placed there after the closing occurred, Marr testified as following:

> Q: [W]ould you say that the loan file was maintained in the filing cabinet in that order, in that manner, from the day of closing until you gave it to [your attorney]?
>
> A: Yes.
>
> Q: It wasn't disturbed in any way?
>
> A: Wouldn't have been. There was no need for me to go into that.
>
> Q: Never moved it?
>
> A: Never moved, nope. Not touched.

(Blythin Decl., Ex. A [Marr Dep. 34:4-14]) (Docket #28-4) Later, however, Marr testified that he never removed any documents from the folder, but simply added to its contents. (Blythin Decl., Ex. A [Marr Dep. 78:2-9]). At best, this contradictory testimony, as well as the fact that the folder did not remain untouched, suggests that Marr cannot state with any certainty whether or not he removed any documents from the folder during the two years between the closing and the meeting with his attorney. Indeed, there are any number of explanations for the missing notice. Consequently, Marr cannot use the envelope theory to overcome the presumption that he received only the documents in the envelope. Furthermore, defendant provides as additional evidence an affidavit by the mortgage loan closer, stating that the closer provided the plaintiff with two copies of the notice. (Smith Aff. ¶ 22) (Docket #24-16).

Given the uncertainty of what documents and how many documents Marr contends he received at the closing, as well as the uncertainty over whether or not Marr removed documents from his loan folder after the closing, the plaintiff has failed to rebut the presumption created by his signed acknowledgment that he received two copies of the notice. As such, the court concludes that a fair-minded jury could not return a verdict for the plaintiff on the evidence presented by Marr. Therefore, the defendant is entitled to summary judgment.

Accordingly,

**IT IS ORDERED** that defendant's motion for summary judgment (Docket #24) as to plaintiff's claim be and the same is hereby **GRANTED**, and this action be and the same is herewith **DISMISSED** on its merits, together with costs as taxed by the clerk of the court.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 3rd day of February, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge